IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  8:22-cv-1456 |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRAVIS R. PRINCE, | ) | |
| | ) | |
| *Respondent.* | ) | |
| _____ | ) | |

**PETITION TO ENFORCE INTERNAL REVENUE SERVICE SUMMONSES**

The United States of America petitions this Court for an order enforcing

Internal Revenue Service ("IRS") administrative summonses served upon Travis

R. Prince as shareholder of Travis Prince, PA ("Prince PA"), and as partnership

representative for PrincEquity, LLC ("PrincEquity"). When the summonses were

issued, the IRS was examining Prince PA and PrincEquity's correct tax liability for

the 2018 through 2020 tax years. The investigation stems from Prince PA and

PrincEquity's involvement in a captive insurance transaction. Although captive

insurance arrangements are recognized under federal tax law, the IRS has

designated certain arrangements as potentially abusive because these transactions

have the potential for tax avoidance and evasion. Travis Prince has provided some

documents to the IRS, but he has failed to fully comply with the summonses

served on him.

The United States, therefore, must petition this Court for an order enforcing the IRS summonses. This Petition and the attached declaration of Revenue Agent Vicki Simmons (Simmons Declaration) explain why the Court should enter an order requiring Travis Prince to fully comply with the summonses.

## BACKGROUND

This petition stems from Prince PA and PrincEquity's use of captive insurance arrangements. This section will first discuss what captive insurance arrangements are; then explain how they relate to the IRS's ongoing examination of Prince PA and PrincEquity's federal income tax returns for 2019 and 2020; and finally, will detail the steps the IRS has taken to obtain the requested documents before bringing this petition.

### I.   Captive Insurance Arrangements and Potential for Abuse

Federal tax law allows the formation of "captive" insurance companies (the "captive insurer"), either in the United States or abroad, to enable operating businesses (the "insured company") to insure against certain risks of their businesses when commercial insurance is not available, or the cost of insurance is prohibitively expensive. Simmons Decl. ¶ 10. Under the typical captive insurance arrangement, the insured company pays premiums to the captive insurer for insurance coverage provided to it. *Id.* ¶ 11. The captive insurer may elect under 26 U.S.C. ("I.R.C.") § 831(b) to exclude the underwriting income/premiums from its

income so it is taxed only as investment income. *Id.* The insured company, in turn, deducts the premiums paid to the captive insurer as ordinary and necessary business expenses under I.R.C. § 162(a). *Id.*

Captive insurance arrangements are often abused when they lack a genuine insurance purpose and are instead used to generate the tax-free return of exorbitant premium payments to their owners or related persons. Simmons Decl. ¶ 14. For example, a captive arrangement is viewed as not providing true insurance when the captive insures against risks that are remote and implausible, or when the captive's "policies" cover the same risks that are covered by the insured's existing commercial coverage, but with "premiums" at double or triple the amount charged by the commercial policies. *Id.* ¶¶ 14-15. Because of the potential for abuse, the IRS has identified certain captive arrangements as "transactions of interest." *See* IRS Notice 2016-66, 2016-47 I.R.B. 745 (Nov. 2, 2016).

The question of whether a captive insurance arrangement is "insurance" within the meaning of federal tax law can be complex. *See* Simmons Decl. ¶¶ 13-20. This includes analysis of whether a captive is a bona fide insurance company, or a sham entity formed primarily to avoid or evade taxes. *See Rent-A-Center, Inc. v. Commissioner*, 142 T.C. 1, 10–11 (2014) (citations omitted); *see also Kidde Industries, Inc. v. United States*, 40 Fed. Cl. 42, 50 (1997), *appeal dismissed*, 194 F.3d 1330 (Fed. Cir. 1999).

To determine whether the captive is formed for a legitimate business purpose, courts examine several factors, including: whether the insured company "faced actual and insurable risks"; whether comparable coverage with commercial insurance companies would have been more expensive; whether commercial insurers would have underwritten similar coverage for the insured; whether the captive arrangement reduced the insured's risk management costs; whether an independent third-party administrator determined the validity of claims paid by the captive under the insured's policy; whether the insured owns stock in, or contributed capital to, the captive. Courts also look to whether the captive insurer entered into bona fide arm's-length contracts with the insured; charged actuarially determined premiums; was subject to governmental regulatory control; paid claims from its separately maintained account; and was adequately capitalized. *See Rent-A-Center,* 142 T.C. at 11–13 (citations omitted); *Kidde Industries*, 40 Fed. Cl. at 50-51.

Even if a captive insurer is considered a bona fide insurance company, there is still a question whether the insured's payments to the captive constitute true insurance premiums entitled to favorable tax treatment. Simmons Decl. ¶ 19. The criteria for evaluating whether an arrangement constitutes insurance for federal income tax purposes have evolved over the years, and courts have established the following four factors to determine whether a captive arrangement constitutes

insurance for federal income tax purposes: (1) the arrangement must involve insurable risks; (2) the arrangement must shift the risk of loss to the insurer; (3) the insurer must distribute the risks among its policyholders; and (4) the arrangement must be insurance in the commonly accepted sense. *See Securitas Holdings*, T.C. Memo 2014-225, at \*7, n.10 (citing *Harper Group v. Commissioner*, 96 T.C. 45, 58 (1991), *aff'd*, 979 F.2d 1341 (9th Cir. 1992). Although these factors are not independent or exclusive, they provide a framework for determining whether insurance exists under federal tax law. *See id*. at \*7.

In determining if the insured's payments to the captive constitute true insurance premiums under the federal tax law, courts consider factors such as: (1) whether the insurer is organized, operated, and regulated as an insurance company by the States in which it does business; (2) whether the insurer is adequately capitalized; (3) whether the insurance policies are valid and binding; (4) whether the premiums are reasonable in relation to the risk of loss; and (5) whether premiums are duly paid and loss claims are duly satisfied. *R.V.I. Guar. Co., Ltd. v. Commissioner*, 145 T.C. 209, 231 (2015).

Determining if premiums charged by a captive or fronting carrier are reasonable depends, in large part, on whether the premiums were computed based on actuarial factors and principles, and whether outside actuaries reviewed them and determined that they fell within the range of reasonable premiums.

Simmons Decl. ¶ 20. An insured's failure to submit any claims for several years may indicate that the captive is not insuring the "actual" risks of the insured. *Id.*

## II. Prince PA and PrincEquity's Use of Captive Insurance Arrangements

The summonses at issue in this case arose during the IRS's examinations of Prince PA and PrincEquity's correct tax liabilities for tax years 2018 through 2020. Simmons Decl. ¶¶ 5-6, 9. Since issuing the summonses, the IRS has now closed its examinations of Prince PA and PrincEquity's tax liabilities for tax year 2018. *Id.* ¶ 6. The examinations of their correct tax liabilities for tax years 2019 and 2020 are still open and ongoing. *Id.* ¶ 5. The information requested by the IRS in the summonses is relevant and necessary for the IRS to conclude its lawful investigation into the correctness of Prince PA and PrincEquity's tax liabilities for 2019 and 2020. *Id.* ¶¶ 36, 44.

From tax years 2014 through 2020 Prince PA and PrincEquity have maintained captive insurance arrangements with a captive insurance company called Series Protected Cell 107, A Series of Oxford Insurance Co TN LLC ("Cell 107"). *Id.* ¶ 21. Travis Prince formed Cell 107 through Oxford Insurance Company in 2014. *Id.* ¶ 22. PrincEquity owns 100 percent of Cell 107's shares. *Id.* ¶ 23. PrincEquity is owned by Travis Prince (95 percent) and Carson Owen PE, LLC, a company Travis Prince manages (5 percent). *Id.* ¶ 24. Prince PA is wholly owned by Travis Prince. *Id.* ¶ 25.

Under the captive insurance arrangement, Cell 107 has purportedly offered an Actual Net Loss Insurance policy to insure Prince PA and PrincEquity against risks including, *inter alia*: (1) "defense cost reimbursement"; (2) "directors and officers"; (3) "loss of licensure"; and (4) "reputational risk". *Id.* ¶ 26. In tax years 2019 and 2020, Prince PA and PrincEquity each took insurance premium deductions for the full amount of premium payments paid to Cell 107 under the captive insurance agreement. *Id.* ¶ 27. Using this captive insurance arrangement, Prince PA and PrincEquity have reduced their reported taxable income by tens of thousands of dollars each year. *Id.* ¶ 28.

According to their 2019 returns, Prince PA and PrincEquity both reported that they paid $186,308 to Cell 107 under the captive arrangement. *Id.* ¶ 29. They each took business expense deductions for the full amount of their reported captive insurance premium payments made to Cell 107. *Id.* In turn, Cell 107 reported on its return that the $372,616 in insurance premium income it received from Prince PA and PrincEquity in 2019 was exempt from taxation under I.R.C. § 831(b). *Id.*

Similarly, in 2020, Prince PA and PrincEquity again took business expense deductions for the full amount of their reported captive insurance premium payments made to Cell 107. *Id.* ¶ 30. According to their 2020 returns, Prince PA and PrincEquity each paid $28,525 to Cell 107 under the captive arrangement. Cell

107 reported $57,337 in insurance premium income it received in 2020 was exempt from taxation under I.R.C. § 831(b). *Id.*

### III.   The IRS's Efforts to Obtain Documents to Determine the Legitimacy of Prince PA and PrincEquity's Captive Insurance Arrangements

Prince PA and PrincEquity were selected for examination by the IRS. Simmons Decl. ¶ 31. In September 2021, IRS Revenue Agent Vicki Simmons prepared administrative summonses requesting that Prince PA and PrincEquity provide information relevant to determining; (1) the legitimacy of their captive insurance arrangement with Cell 107, and (2) the correctness of the tax liabilities reported on their 2018 and 2019 tax returns. *See id.* ¶ 36. The summonses sought documents including, *inter alia*, accounting books and records, organizational charts, documents reflecting ownership interests, documents reflecting the identity of officers and directors, complete financial statements, corporate minutes, insurance agreements, contracts, engagement letters, and documents evidencing the payment of insurance premiums. *Id.* ¶ 35. In accordance with I.R.C. § 7603(a), Revenue Officer Bryan Morris served an attested copy of the summons on Travis Prince on September 14, 2021. *Id.* ¶ 37.

Travis Prince did not appear on October 12, 2021, nor did he produce any responsive documents sought in the summonses by that time. *Id.* ¶ 38. On or about January 4, 2022, the IRS's Office of Chief Counsel sent Travis Prince a demand letter requesting that he produce all of the requested documents. *Id.* ¶ 39.

On April 8, 2022, Revenue Agent Vicki Simmons received a letter by Federal Express from Travis Prince's designated power of attorney with some responsive documents. *Id.* ¶¶ 40-41. Although some relevant documents were produced in response to the summonses, Travis Prince has not provided all documents relevant to determine the correctness of Prince PA and PrincEquity's returns and tax liabilities for tax year 2019. *Id.* Travis Prince has refused to produce all responsive documents, and the missing documents are not in the IRS's possession. *Id.* ¶¶ 41, 44. Travis Prince's power of attorney has ignored repeated requests from Revenue Agent Simmons that Prince PA and PrincEquity supplement their document production to fully comply with the summonses. *Id.* ¶¶ 42-43. Absent cooperation from Travis Prince, additional summonses will be necessary to complete the IRS's investigation into the correctness of Prince PA and PrincEquity's reported tax liabilities for 2020.

## THE SUMMONSES SHOULD BE ENFORCED

When a person who receives a summons fails to comply, the United States may seek enforcement in federal court. 26 U.S.C. § 7604(b). This Court has jurisdiction to hear the petition under 26 U.S.C. §§ 7402(b) and 7604(a), as well as 28 U.S.C. §§ 1340 and 1345. Venue over this matter is proper in the Middle District of Florida because Travis Prince resides within this district.

To obtain enforcement of IRS summonses, the United States must establish that the summonses (1) are issued for a legitimate purpose; (2) seek information that may be relevant to that purpose; (3) seek information that is not already within the IRS's possession; and (4) satisfy all administrative steps required by the Internal Revenue Code. *United States v. Powell*, 379 U.S. 48, 57–58 (1964). The United States "may satisfy its minimal burden by presenting the sworn affidavit of the agent who issued the summons attesting to these facts." *United States v. Morse*, 532 F.3d 1130, 1132 (11th Cir. 2008) (citation omitted).

Revenue Agent Vicki Simmons is a duly commissioned IRS Revenue Agent who is authorized to issue IRS administrative summonses pursuant to I.R.C. § 7602, Treas. Reg. (26 C.F.R.) § 301.7602-1, and IRS Delegation Order No. 4 (as revised). *See* Simmons Decl. ¶¶ 1, 4. Her declaration establishes the United States' prima facie showing required to enforce the IRS summonses. *See generally* Simmons Decl. The summonses comply with each of the *Powell* factors, as detailed below.

## I.   The Summonses Were Issued for a Legitimate Purpose

The summonses were issued so that the IRS could ascertain the accuracy of tax returns and determine tax liabilities, which are allowable purposes for an IRS summons enumerated in I.R.C. § 7602. The IRS may issue summonses for when permitted by statute, including for the purpose of determining whether returns

are correct and determining any person or entity's tax liability. I.R.C. § 7602. The

bar for a summons to be issued for a legitimate purpose is low, and the IRS need

not be certain that a tax return is inaccurate, or that tax liabilities need adjustment.

Indeed, the IRS may issue and enforce a summons "merely on suspicion that the

law is being violated, or even just because it wants assurance that it is not." *Powell*,

379 U.S. at 57 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950)).

Both summonses issued to Travis Prince were part of the IRS's investigation

regarding the correct income tax liabilities of Prince PA and PrincEquity for tax

years 2018 and 2019. *See* Simmons Decl. ¶¶ 5, 9, 31-37.

## II.     The Summonses Seek Relevant Information

For a summons to be enforceable, it must seek information that may be

relevant to an examination. Summonses are enforceable if they would enable the

IRS to examine information or data that is potentially relevant to an investigation.

*United States v. Arthur Young & Co.*, 465 U.S. 805, 813–14 (1984). Information and

records that might bear on whether a return is accurate might be relevant to

enforcement. *Id.* at 814–15. The IRS need not establish that the information will

affect the accuracy of a return or the amount of income tax liabilities, only that the

information may do so.

The summonses in this case seek information that may be relevant to the

examination because the IRS expects the documents sought will shed light on

11

several relevant questions, including: (1) whether Cell 107 qualifies as a captive insurance company; and (2) whether Prince PA and PrincEquity are entitled, as insureds, to claim income deductions for the insurance premiums they allegedly paid to Cell 107. *See* Simmons Decl. ¶ 36. Prince PA and PrincEquity have failed to produce documents such as financial statements and documents evidencing premiums that were paid under the captive insurance arrangements. *Id.* ¶ 41. That information is necessary for the IRS to complete its investigation to verify the income and premiums reported on Prince PA and PrincEquity's returns. *Id.* The IRS has also not received documents supporting the existence of risks covered by the captive insurance, like actuarial studies; records of insurance claims submitted to the captive insurer; or payments received from the captive insurer for successful claims. *Id.*

## III.    The IRS Does Not Already Possess the Information Sought

Travis Prince has produced some documents to the IRS, so the United States is not seeking enforcement regarding documents that he has already provided. But there are numerous outstanding requests in the summonses that Prince has not fully complied with, including requests for accounting books or records, financial statements, documents supporting the existence of risks covered by the captive insurance, records of insurance claims submitted to the captive insurer, proof of payments received from the captive insurer for successful claims, and more.

12

Simmons Decl. ¶¶ 41, 44. The documents sought are not already within the IRS's possession. *Id.* ¶ 46.

## IV.    The IRS Complied with the Requirements of the Internal Revenue Code

The IRS complied with all administrative steps required by the Internal Revenue Code in its issuance of the summonses. Simmons Decl. ¶ 45. Further, no Justice Department referral, as defined by I.R.C. § 7602(d)(2), is in effect with respect to Prince PA, PrincEquity, or Travis Prince for the tax years under examination. *Id.* ¶ 47.

### REQUEST OF RELIEF

WHEREFORE, the United States respectfully requests that the Court:

A.    Order Respondent Travis Prince to show cause in writing why the summonses should not be enforced;

B.    Direct Respondent Travis Prince to fully obey the summonses by ordering him to appear before Revenue Agent Simmons, or any other proper officer or employee of the Internal Revenue Service, and produce for examination books, records, papers, and other data as required by the summonses;

C.    Award the United States the costs it incurs through this action; and

D.    Provide such further relief as it deems just and proper.

Dated:   June 27, 2022                   Respectfully submitted,

                                         DAVID A. HUBBERT
                                         Deputy Assistant Attorney General

                              By:    */s/ Forrest T. Young*
                                         FORREST T. YOUNG
                                         Trial Attorney, Tax Division
                                         U.S. Department of Justice
                                         P.O. Box 14198
                                         Washington, D.C. 20044
                                         Telephone: (202) 353–1978
                                         Facsimile: (202) 514–4963
                                         Email: Forrest.T.Young@usdoj.gov

                                         *Of Counsel:*

                                         ROGER B. HANDBERG
                                         United States Attorney
                                         Middle District of Florida